IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAIG MARDIKIAN, a California Resident, dba M&B DEVELOPMENT, a California General Partnership, and 1170 MARKET STREET, LLC, a California Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>GOLDEN EAGLE INSURANCE CORPORATION, a California Corporation, PEERLESS INSURANCE COMPANY, a New Hampshire Corporation, and DOES 1-10, inclusive,<br><br>Defendants. | No. C 13-02981 WHA<br><br>**ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO DISMISS** |

## INTRODUCTION

In this action for breach of contract, plaintiffs move to remand and defendants move to dismiss. For the reasons stated below, the motion to remand is **GRANTED**. The motion to dismiss is **DENIED AS MOOT**.

## STATEMENT

The main question is whether defendants have presented competent evidence that the principal place of business for Golden Eagle Insurance Company is in Boston, Massachusetts, and not San Diego, California as plaintiffs allege. Here are the facts alleged.

Plaintiffs brought the present action against Golden Eagle and Peerless for breach of contract and breach of the covenant of good faith and fair dealing in San Francisco Superior

1  Court in May 2013.  Plaintiffs' first amended complaint alleges they own an eight-story office
2  building in San Francisco insured by a Golden Eagle insurance policy.  It further alleges
3  plaintiffs' building suffered wind damage.  Golden Eagle assured plaintiffs that the damage was
4  covered under the policy, advised plaintiffs to begin repair work, and then changed its mind and
5  denied coverage.

6  In June 2013, Golden Eagle filed a notice of removal to this Court alleging that it does
7  business in more than one state, and that at the time of the present action's filing and removal,
8  Golden Eagle was (and still is) a corporation organized under the laws of the State of New
9  Hampshire with its principal place of business in Boston (Dkt. No. 1 ¶ 9).

10  Plaintiffs' first amended complaint alleges that Golden Eagle's principal place of
11  business was San Diego, California, at the time of removal.  In its motion to remand, plaintiffs
12  point to a variety of evidence in support of this allegation.  They point to a complaint filed by
13  Golden Eagle in April 2012 in which Golden Eagle alleged it "was, and now is, a corporation
14  duly organized and existing under and by virtue of the laws of the State of California" (Dkt. No.
15  15 at 6).  This was filed in Los Angeles County Superior Court.  Plaintiffs also rely on Golden
16  Eagle's official website as it appeared to counsel on May 21, 2013, wherein Golden Eagle only
17  lists California offices and states that:

> Golden Eagle Insurance provides insurance products for small to medium sized California-based businesses.  As a local California company, we know your market and the ins and outs of your specific industry.

Plaintiffs further point out that Golden Eagle is a wholly-owned subsidiary of Peerless (*id.* at 2–3, Dkt. No. 3 ¶ 2).  In its answer to the first amended complaint, Peerless admits that Golden Eagle's website states that it is "headquartered" in San Diego (Dkt. No. 7 ¶ 2).

**ARGUMENT**

**1. LEGAL STANDARD.**

This Court has jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states.  28 U.S.C. 1332(a).  The federal diversity jurisdiction statute provides that "a corporation shall be deemed to be a citizen of any State by

which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

The Supreme Court has explained the term principal place of business as follows:

> "[A] principal place of business is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's nerve center. And in practice it should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the nerve center, and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."

*Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (internal citations omitted).

The removing party bears the burden of establishing that removal is proper. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988). The removal statutes are strictly construed such that any doubts are resolved in favor of remand. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz*, 559 U.S. at 96–97 (citation omitted).

**2.   NERVE CENTER.**

Defendants argue in their opposition to plaintiffs' motion to remand that plaintiffs' evidence is premised on outdated, inaccurate and obsolete evidence (Dkt. No. 23 at 8). In support of their contention that Boston is Golden Eagle's nerve center, defendants offer a declaration from one James Pugh, a corporate secretary to both Peerless and Golden Eagle. Mr. Pugh avers that Golden Eagle is an insurance company that does business in more than one state; that its "principal place of business" is Boston; that Boston is the primary location of its books and records; and that all nine of Golden Eagle's principal officers are located in the Boston office, where they conduct their board meetings (Pugh Decl., Dkt. No. 23-1 ¶¶ 3–4). Although self-serving and largely conclusory, this declaration constitutes some evidence that the Boston location is Golden Eagle's nerve center.

Defendants also attach official records stating that Golden Eagle changed its state of incorporation from California to New Hampshire in 2009, became a wholly-owned subsidiary of Peerless, and registered its Boston office as its principal office address (Dkt. No. 23 at 4).

3

This documentary evidence cuts both ways. Although an entity's state of incorporation is probative of the location of its nerve center, Golden Eagle's principal address listed in its filed documents is the same address as one of Golden Eagle's parent entities, namely Liberty Mutual. Defendants do not explain how or why these allegedly separate entities occupy the same office space. This raises a suspicion that the Boston location may not be the actual center of operations. As the Supreme Court noted,

> If the record reveals attempts at jurisdictional manipulation — for example, that the alleged "nerve center" is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat — the courts should instead take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.

*Hertz*, 559 U.S. at 97 (2010).

Plaintiffs contend that defendants admitted in a action after Golden Eagle changed its state of incorporation in 2009 that Golden Eagle is still a California corporation. Specifically, Golden Eagle Alleged:

> At all relevant times, Plaintiff, GOLDEN EAGLE INSURANCE CORPORATION, was, and now is, a corporation duly organized and existing under and by virtue of the laws of the State of California, and authorized to do, and is doing, business as a multiple line insurance business in the State of California.

Complaint ¶ 2, *Golden Eagle Insurance Corp. v. City of Los Angeles Dep't Of Water and Power*, 2012 WL 1589228 (Cal. Super. April 27, 2007). To counter this contention, defendants attach a declaration from San Diego-based attorney Robert Luster. Attorney Luster was the attorney on record in the 2012 action. He avers that the prior statement that Golden Eagle's was incorporated in California was incorrect and was a "drafting error" (Luster Decl., Dkt. No. 23-2 ¶ 2).

Although it is unclear from the record, Attorney Luster appears to be an in-house counsel for Golden Eagle. Plaintiffs point out that his official address on the State Bar of California's website is the same address listed as Golden Eagle Insurance's San Diego headquarters (Pillsbury Decl., Dkt. No. 24-1 at ¶ 5). Under the Supreme Court's admonition in *Hertz*, the presence of in-house counsel in San Diego suggests that San Diego is a place where legal strategy is executed, and more than a mere "sales location." *See Hertz*, 559 U.S. at 95.

4

Attorney Luster's declaration thus raises the question whether Golden Eagle's San Diego office where he works as in-house counsel is Golden Eagle's actual nerve center.

Defendants also argue in opposition that plaintiffs rely on outdated, historical website references to Golden Eagle's former headquarters. At the time of removal, the Golden Eagle websited listed the San Diego office as its headquarters. Defendants emphasize the website has recently been "updated" to list Boston as the headquarters of Golden Eagle Insurance in its "About Us" page. Nevertheless, even the updated web page on which this text appears still indicates that San Diego is Golden Eagle's nerve center. The page displays a large map of California. The map indicates three cities: Walnut Creek and Aliso Viejo with two dots, and San Diego with a star. There is no map of any other state on the webpage. The page also displays a large photo of the skyline of San Diego above the map.

Aside from the optics, other evidence from the web page suggests Golden Eagle's business is still conducted exclusively in California. Under the "Find an Insurance Agent" tab, the only state to choose on the drop-down menu is California. Under the "Contact Us" tab, San Diego is listed as its "*Home Office*/Southern California Regional Office" (italics added).

In sum, defendants rely on a declaration and their incorporation filings, while plaintiffs point out that defendants essentially hold themselves out as a California concern. In light of the general rule that doubts will be resolved against the exercise of federal jurisdiction, this order finds that Golden Eagle's nerve center is still in California and holds that Golden Eagle is a citizen of California.

**3.   SHAM DEFENDANT.**

Defendants argue that even if Golden Eagle were deemed a California entity for jurisdictional purposes, Golden Eagle is a sham defendant that was named in the complaint in order to defeat removal jurisdiction. This contention is not persuasive.

Defendants argue that Peerless alone issued the policy, not Golden Eagle, and that therefore Golden Eagle is not a party to the contract. Plaintiff's complaint alleges that plaintiffs were insured by a property insurance policy issued by both Golden Eagle and Peerless. Defendants respond that the policy identifies Peerless as the insurer 22 times, and not Golden

5

Eagle (Dkt. No. 18 at 4 n.2). But this repeated identification of Peerless is almost always accompanied by Golden Eagle's name and logo prominently displayed on the top right of each page: this occurs 16 of the 22 times Peerless' name is used (Dkt. No 1-1 at 26–27, 29, 31–34, 36–37, 39, 41–42, 45–46, 48, 50–51, 66, 68–69, 74, 76).

Plaintiffs also adduce evidence of Golden Eagle's involvement in the execution of the contract. Plaintiffs paid an invoice issued jointly by Peerless and Golden Eagle. They paid Golden Eagle at Golden Eagle's instruction. Golden Eagle cashed the checks (Mardikian Decl., Dkt. No. 15–3). This order holds that the repeated use of the Golden Eagle name and logo and Golden Eagle's participation in the contract create a reasonable inference that Golden Eagle was involved in the insurance transaction either as a party, as a broker, or in some other material capacity. On the present record, Golden Eagle is a proper party to this action. If on remand the defendants are able to get the state judge to dismiss Golden Eagle, then perhaps this action will be removable.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to remand is **GRANTED**. Because this Court does not have jurisdiction to hear this case, defendants' motion to dismiss is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: August 23, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6